WERDEGAR, J., Concurring and Dissenting.
I fully endorse the majority’s preliminary holdings that, with regard to defendant’s claim the trial court improperly excused Prospective Juror R.A. for cause under the Witt standard (Wainwright v. Witt (1985) 469 U.S. 412 [83 L.Ed.2d 841, 105 S.Ct. 844] (Witt)), under our precedents defendant did not forfeit this claim on appeal by failing to object (maj. opn., ante, at p. 638), but that, in the future, a defendant in a capital case must make a timely objection or the functional equivalent to preserve the issue for appeal (id. at p. 643). Although the “no objection required” rule of People v. Velasquez (1980) 26 Cal.3d 425 [162 Cal.Rptr. 306, 606 P.2d 341] is a venerable one, and one on which the court has recently relied (see People v. Bivert (2011) 52 Cal.4th 96, 112 [127 Cal.Rptr.3d 261, 254 P.3d 300] [“We have held the failure to object does not forfeit a claim raised on appeal pursuant to . . . Witt. . . .”]), I am persuaded by the majority’s discussion that the rule is ripe for reconsideration, and that—as a rule applicable prospectively only—we should require parties to make their objections known before they may on appeal challenge the excusal of a juror under the Witt standard.
With respect to the merits of the trial court’s dismissal of Prospective Juror R.A. for cause, however, I disagree with the majority’s conclusion the juror’s written responses to the jury questionnaire alone, with no oral, face-to-face questioning to clarify his views, demonstrated it was clear and left no doubt he would be unable to temporarily set aside his views about the death penalty “in deference to the rule of law.” (Lockhart v. McCree (1986) 476 U.S. 162, 176 [90 L.Ed.2d 137, 106 S.Ct. 1758]; see also People v. Wilson (2008) 44 Cal.4th 758, 787 [80 Cal.Rptr.3d 211, 187 P.3d 1041].) Because, as the majority acknowledges (maj. opn., ante, at p. 643), “[t]he erroneous exclusion of a prospective juror under [the Witt standard] compels reversal of the *700 penalty verdict regardless of whether the prosecutor had remaining peremptory challenges,” I conclude the trial court’s dismissal of Prospective Juror R.A. requires reversal of the penalty judgment in this case. On this basis, I dissent.
I.
As the majority observes, a prospective juror in a capital case may be excused if the juror’s views would “ ‘prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.’ ” (Witt, supra, 469 U.S. at p. 424, quoted by the maj. opn., ante, at p. 643.) The extent to which a trial court can properly make this determination without actually speaking to the prospective juror, relying solely on reading the juror’s written responses in the jury questionnaire, has found its way to this court several times in recent years, no doubt because jury questionnaires have become a standard practice in capital case trials. As we have recognized, written jury questionnaires can streamline the “long and tedious business” of choosing jurors in a capital case, and “[pjrudent use of written jury questionnaires can be a valuable addition to the process, serving as a screening tool during death qualifications of jurors.” (People v. Wilson, supra, 44 Cal.4th at p. 790.) The devil, of course, is in the details. (People v. Thompson (2010) 49 Cal.4th 79, 96-97 [109 Cal.Rptr.3d 549, 231 P.3d 289] [when using a jury questionnaire to help choose jurors in a capital case, “ ‘[t]he legitimate pursuit of laudatory efficiency should not be transformed into an arbitrary pursuit of speed for its own sake’ ”].)
We first addressed the issue in People v. Stewart (2004) 33 Cal.4th 425 [15 Cal.Rptr.3d 656, 93 P.3d 271]. In Stewart, we reversed the penalty judgment on the facts of that case, but further suggested that it might not ever be a justifiable practice to excuse a prospective juror for cause based solely on his or her written responses, which often take the form simply of boxes checked on a form. (Id. at pp. 449-450.) Less than two years later, however, we retreated from that position and specifically rejected Stewart’s suggestion that some in-person questioning was mandatory, holding that “nothing in Stewart indicates that an excusal without oral voir dire is improper where the prospective juror’s answers to a jury questionnaire leave no doubt that his or her views on capital punishment would prevent or substantially impair the performance of his or. her duties in accordance with the court’s instructions and the juror’s oath.” (People v. Avila (2006) 38 Cal.4th 491, 531 [43 Cal.Rptr.3d 1, 133 P.3d 1076], italics added (Avila).) Thus, in Avila, we held “a prospective juror in a capital case may be discharged for cause based solely on his or her answers to the written questionnaire if it is clear from the answers that he or she is unwilling to temporarily set aside his or her own beliefs and follow the law.” (Ibid., italics added.)
*701 Subsequent cases adopted the holding in Avila. In People v. Wilson, supra, 44 Cal.4th at page 787, this court held that “reliance on written responses alone to excuse prospective jurors for cause is permissible if, from those responses, it is clear (and Teavefs] no doubt’) that a prospective juror’s views about the death penalty would satisfy the Witt standard . . . .” (Italics added; accord, People v. Thompson, supra, 49 Cal.4th at p. 97.) In People v. Russell (2010) 50 Cal.4th 1228, 1263 [117 Cal.Rptr.3d 615, 242 P.3d 68], we held the trial court “did not err by excusing . . . seven prospective jurors based solely on their clear and unequivocal written responses to the questionnaire.” (Italics added.)
Accordingly, the standard for assessing on appeal the trial court’s decision to dismiss Prospective Juror R.A. solely on the basis of his written responses in his jury questionnaire is whether it was clear and left no doubt he was unable or unwilling to put aside his views against the death penalty and follow the law. In this case, R.A. indicated he was strongly opposed to the death penalty and would have difficulty applying it. The majority finds this stated opposition sufficient to satisfy the test for excusing a juror under the Witt standard without any clarification that might come from questioning the juror in person.
I disagree. That a juror strongly opposes the death penalty and states he or she would have difficulty applying it is the starting point of our inquiry, not the ending point. As we explained in People v. Wilson, supra, 44 Cal.4th at pages 785-786: “[T]he mere fact a prospective juror, in a written questionnaire, checked a box or otherwise expressed a personal opposition to the death penalty does not permit the court to automatically disqualify him or her from the jury. ‘Decisions of the United States Supreme Court and of this court make it clear that a prospective juror’s personal conscientious objection to the death penalty is not a sufficient basis for excluding that person from jury service in a capital case under [Wainwright v.] Witt, supra, 469 U.S. 412. In Lockhart v. McCree[, supra,] 476 U.S. 162, 176 . . . , the high court observed that “not all those who oppose the death penalty are subject to removal for cause in capital cases; those who firmly believe that the death penalty is unjust may nevertheless serve as jurors in capital cases so long as they clearly state that they are willing to temporarily set aside their own beliefs in deference to the rule of law.” Similarly, in People v. Kaurish (1990) 52 Cal.3d 648, 699 [276 Cal.Rptr. 788, 802 P.2d 278] . . . , we observed: “Neither Witherspoon [v. Illinois (1968) 391 U.S. 510 [20 L.Ed.2d 776, 88 S.Ct. 1770]] nor [Wainwright v.] Witt, . . . nor any of our cases, requires that jurors be automatically excused if they merely express personal opposition to the death penalty. The real question is whether the juror’s attitude will ‘ “prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.” ’ (Wainwright v. Witt, supra, 469 U.S. at p. 424, fn. omitted.) A prospective juror personally opposed to the *702 death penalty may nonetheless be capable of following his oath and the law. A juror whose personal opposition toward the death penalty may predispose him to assign greater than average weight to the mitigating factors presented at the penalty phase may not be excluded, unless that predilection would actually preclude him from engaging in the weighing process and returning a capital verdict.” (Italics added.)’ [Citation.]” (Underscoring added.)
The majority reasons that R.A.’s written answers do not clearly show that he could set aside his views and apply the law. (Maj. opn., ante, at p. 649.) But that is not the test. In order for the trial court to excuse a prospective juror on the written record alone, without oral voir dire, the clarity in the record must be that the prospective juror could not set aside his or her views against the death penalty. An excusal without any oral voir dire is permitted only “if it is clear from the answers that he or she is unwilling to temporarily set aside his or her own beliefs and follow the law.” (Avila, supra, 38 Cal.4th at p. 531, italics added.) By instead reasoning the trial court’s excusal of R.A. was justified because the record does not clearly show he could set aside his views, the majority has reversed the applicable test, thereby making it easier to remove those prospective jurors who lean against capital punishment. In so doing, the majority neither acknowledges the change nor proffers any legal authority in support; nevertheless, trial courts now will be encouraged to forgo oral questioning of prospective jurors who hold negative views about the death penalty and simply assume they are excludable under Witt unless the record clearly shows otherwise. That is not the law. (Lockhart v. McCree, supra, 476 U.S. at p. 176; People v. Wilson, supra, 44 Cal.4th at p. 785.)
To be sure, R.A.’s written answers indicated he held strong views against the death penalty. But he also acknowledged he could follow the law and the court’s instructions, that nothing would prevent him from doing so in this case, and given three choices in question No. 46, declined to indicate he would “ALWAYS” vote for the death penalty irrespective of the evidence or “ALWAYS” vote for a life sentence, but instead chose the third alternative provided by the questionnaire: “ T would consider all of the evidence and the jury instructions as provided by the court and impose the penalty I personally feel is appropriate.’ ” (Maj. opn., ante, at p. 645, fn. 22 [reproducing the entirety of question No. 46].) On this record, one cannot say “it is clear from [R.A.’s] answers that he ... is unwilling to temporarily set aside his . . . own beliefs and follow the law.” (Avila, supra, 38 Cal.4th at p. 531, italics added.)
In support of its contrary conclusion, the majority devalues R.A.’s answer to question No. 46, both by emphasizing that we must consider R.A.’s answers in their totality (maj. opn., ante, at p. 648 [purporting to evaluate “the whole record”]), and by characterizing his response that he would consider all of the evidence and would not “ALWAYS” vote for life, as a “pro *703 forma” answer (ibid.). The totality of R.A.’s responses, however, includes his answer to question No. 46, which affirms that he would set aside his personal views and follow the law.[1] Moreover, the concept of a “pro forma” response—as opposed evidently to some more trustworthy or sincere response—injects a new element into the law never before articulated. It also is meaningless. On a cold record, to determine that any particular answer to a multiple-choice question is “pro forma” rather than sincerely felt is impossible.
The design of jury questionnaires has not yet evolved to the point where the answers elicited are always sufficiently clear and unambiguous to permit determination of a juror’s qualifications for Witt purposes. Question No. 46 in the questionnaire used in this case is a good example. No doubt prospective jurors choosing they would “ALWAYS” vote for a sentence of life or a sentence of death, irrespective of the evidence, were deemed excludable without the need of further clarification, and rightly so. (See People v. Wilson, supra, 44 Cal.4th at pp. 783, 788-790 [by checking they would “ALWAYS” vote for life in prison “ ‘[n]o matter what the evidence was,’ ” jurors indicated they were excludable under Witt]; Avila, supra, 38 Cal.4th at pp. 531-533 [same].) Prospective Juror R.A., however, rejected those two choices and chose the third alternative; that is, he indicated he would consider all of the evidence and the jury instructions and would vote for “the penalty I personally feel is appropriate.” By concluding this answer was insufficient to require further inquiry of R.A. and forestall his summary dismissal from the jury panel, the majority necessarily treats question No. 46 as a question with no right answer.
Moreover, in dismissing question No. 46 because it allows jurors to choose a penalty they “ ‘personally feel is appropriate’ ” (maj. opn., ante, at p. 649, italics omitted), the majority’s reasoning leads it to a logical contradiction. If, as the majority seems to think, question No. 46, answer “c,” does not fairly ask jurors if they can or will set aside their personal views, consider the evidence and the jury instructions, and follow the law, then the questionnaire fails to ask the key question under Witt: Can the juror set aside his or her personal views and apply the law, or would the person’s views about capital punishment “ ‘prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.’ ” (Witt, supra, 469 U.S. at p. 424.) Without a response to that question, a juror’s Witt qualification cannot be determined without a clarifying oral inquiry.
*704 In addition, the record shows many prospective jurors who were not dismissed from the jury based solely on their written responses answered question No. 44a concerning support for the death penalty by circling either “9” or “10,” indicating their strong support. Some of these jurors—like R.A.—also checked “c” for their answer to question No. 46, indicating they would consider the evidence and jury instructions and vote for “the penalty I personally feel is appropriate.” The retention of these strongly pro-death-penalty jurors suggests the trial court found that checking answer “c” to question No. 46 was informative and relevant for Witt purposes.
Had the trial court questioned R.A. in person, observed his facial expressions and his demeanor, evaluated his vocal inflections and general bearing, and then made a conclusion about the depth of his understanding of his duty as a juror as well as his sincerity—in short, his state of mind—the court’s conclusion as to his qualification would be virtually unassailable on appeal.[2] With no such factual finding as to R.A.’s true state of mind following an in-person examination, however, we are left simply with his inconsistent written answers. By finding R.A. was excludable under the Witt standard, the majority—without acknowledging it—is making a selective credibility determination based on his written responses, accepting some of his answers (e.g., his opposition to the death penalty) as reflecting his true state of mind while discounting others (e.g., that he would consider all of the evidence and vote for the appropriate penalty) as less indicative of his true beliefs. To conclude it was clear and left no doubt that R.A.’s written responses rendered him excludable under Witt, the majority applies a selective evaluation of the record and thereby undermines defendant’s constitutional right to an impartial jury.
II.
On this record, reviewing the question de novo as we must (People v. Thompson, supra, 49 Cal.4th at p. 100; Avila, supra, 38 Cal.4th at p. 529), we cannot be confident Prospective Juror R.A.’s views concerning the death penalty, as expressed solely in his written responses to the jury questionnaire, would have prevented or substantially impaired his ability to perform the duties of a juror “ ‘in accordance with his instructions and his oath’ ” (Witt, supra, 469 U.S. at p. 424), or that he was not “willing to temporarily set aside [his] own beliefs in deference to the rule of law” (Lockhart v. McCree, *705 supra, 476 U.S. at p. 176). That is, on this record, the People cannot show it is clear and leaves no doubt that R.A.’s views about the death penalty would satisfy the Witt standard. (People v. Wilson, supra, 44 Cal.4th at p. 787.) By holding otherwise, the majority contravenes defendant’s “right to an impartial jury drawn from a venire that has not been tilted in favor of capital punishment by selective prosecutorial challenges for cause.” (Uttecht v. Brown, supra, 551 U.S. at p. 9.)
For these reasons, I dissent.
Appellant’s petition for a rehearing was denied October 12, 2011.

 The totality of his answers also includes R.A.’s statement, in response to a question asking if his views about the death penalty have changed over time, that he had “become more passive due to life’s experiences,” suggesting a lessening of his opposition to the penalty.

 People v. Abilez (2007) 41 Cal.4th 472, 497 [61 Cal.Rptr.3d 526, 161 P.3d 58] (following oral voir dire, a trial court’s evaluation of a prospective juror’s state of mind is binding on the appellate court). “Deference to the trial court is appropriate because it is in a position to assess the demeanor of the venire, and of the individuals who compose it, a factor of critical importance in assessing the attitude and qualifications of potential jurors.” (Uttecht v. Brown (2007) 551 U.S. 1, 9 [167 L.Ed.2d 1014, 127 S.Ct. 2218].)